So, of course, our marshal will tell you when your time is up. So, Mr. Carter, if you'd like to begin. Good morning. Good morning, Chief. My name is Terry Carter and I represent Joseph Bittendorf in this matter. I'd like to begin today by talking about the primary purpose of tax sales in Illinois and the Property Tax Code. The Property Tax Code and its predecessor, the Illinois Revenue Act, have been in existence since before the Civil War. The main purpose of the Property Tax Code is to ensure the collection of real estate taxes. The statutes are effective. At least in Cook County, we know that between 98 and 99 percent of the taxes assessed against property are collected. The statutes work. Why do they work? They work because there's a threat that property owners can lose their home if taxes aren't paid. And to effectuate that purpose, the government encourages tax purchasers to participate in these tax sales. The government needs tax purchasers to participate and they encourage it. And the Property Tax Code, because of that, protects tax purchasers as well. Once a tax sale occurs, a tax purchaser can receive his money back based on the fact that the property was redeemed from the tax sale. If there's no redemption and the tax purchaser has strictly complied with the code, he can obtain a tax payment. Or, if the sale has been declared erroneous, the Property Tax Code protects tax purchasers and allows for refunds to the tax purchaser so that they're made whole again. In this case, that's what happened. In this case, is the issue not where does this tax refund come from? That is the issue. Or pot of money? That's correct. That is the issue. So let's talk about that. Sure. So without question, the trial courts have ordered refunds. The Property Tax Code has a mechanism for which refunds are to be distributed towards the tax purchasers. Section 21-310D, which is the statute which talks about the refund. Once the sale and error is declared, which happened here, the county collector shall, on demand of the owner of the certificate of purchase, refund the amount paid. The collector shall refund the amount paid. The county collector shall deduct from the amounts of the appropriate taxing bodies the pro-rata amounts paid. The statute on its face is plain, and the plain meaning means the collector pays, then seeks its refund from the taxing body. What's the time period, the relevant time period? Pays when? Gets the refund from the taxing body when? The time period works like this. Upon demand, the collector shall pay. That's what the statute says. If the collector doesn't have the money, if someone doesn't have the money, the case law and the statutes allow the collector to make reasonable rules or levy additional taxes. The taxing body could levy additional taxes to get this income in so that the refund can be paid and protect the tax purchaser. Is the taxing body the same thing as the taxing district? Yes, we believe there's not. Those terms are used several different times different. Agreed, I agree, and I believe that they are the exact same thing. The taxing body in this case, we believe, is the town of Cortland. It can only be the town of Cortland. The town of Cortland enacted the special service area, they levied the tax in the special service area, and they collected the tax in the special service area. Now, there's ramifications. If the town of Cortland would actually levy, then that money would actually be coming from residents who are not in that SSA, right? That's correct. Which has its own ramifications that aren't really intended by the statute, which sets up the SSAs. That's correct, but we can go back to the property tax code because the tax purchaser is entitled to the refund. He's entitled to the refund, and the ultimate liability for any refunds here in this case, as in the Arlington Heights case, which we cite in our briefs, rests with the taxing body that received the taxes from the erroneous sale, and here it's Cortland. So it's not the SSA, it's Cortland? Yes, the SSA is not a legal entity. It is a specific area, which is defined by Section 27.5 of the tax code, which says it's a continuous area within a municipality or county, which these certain services are provided via the tax that's implemented or through the ordinance. So without question here, we believe that the town of Cortland received the money, and the town of Cortland is the taxing body here, and ultimately is responsible for the refund in this case. So the statute works. If the claim meeting works, the tax purchaser is assured that upon demand, he or she can be paid once that sale and error is declared. So we have erroneous sales from both parties here. So once that refund is made, that's to your client then, right? Correct. Okay. The collector is really synonymous with treasurer, right? Correct. You're a county treasurer. So in the short term, that comes from the county treasury? It could. And then in the long term, it comes from the taxpayers, you're saying, of Cortland? It comes from Cortland, that's correct. Okay. And so the entry of the sale and error and the statute protect the tax purchaser and ensures their participation in the process. They have that protection. And again, the purpose is to collect the delinquent real estate taxes. The collector in this case chose to make the source of the refund the issue. Once the trial courts declared that the sales were erroneous, the collector then filed a motion seeking to limit the refund to the special service area, one special service area number, I believe it's number seven, which went to the SSA 7, which was the development of the suing system. At that point, the town of Cortland intervened, asking the same thing. So it's our contention that the issue here is between the collector in Cortland. It is not between the tax purchasers and the collector or the tax purchasers in Cortland. The collector made the issue when they brought it in. Again, the ordinance itself was drafted and enacted by the town of Cortland. The taxes were levied by Cortland and the collector, and they also collected the taxes. They are the taxing body. There can be no other taxing body, in our opinion, because the SSA is not a taxing body. Your statement that the issue is between the collector and the town of Cortland. Yes, sir. What issue are you referring to when you use the word the term issue? Yes, sir. The collector has the right to recoup the monies that it pays out, that he pays out. So how they get those funds or obtain those funds from Cortland, the taxing body, is between them. It's not between the tax purchaser and the collector or the tax purchasers and the town of Cortland. It's between Cortland and the collector. So that's the issue there. So the trial court's decision resulted in a few things here. Their decision was that it was unacceptable, basically. Their decision was that any refund issued here comes from SSA 7. Right. There's no money. SSA 7, that's correct, has expired. There is no more money coming in, and there is no money in SSA 7. So effectively, the tax purchasers in this case will receive nothing for the rest of time out of this case, other than the general ad valorem taxes on the property, which were a few thousand dollars, not the bulk of the sale. So the trial court's decision entitles the tax purchasers to refunds. The tax purchasers through the tax sales partially funded the sewage system, the constructions of the sewage system. The sewage system in this case benefits the entire town. And the reason I say that is because in the record, the trial court judge, Judge Honorable Brady, indicated that the whole town has a sanitary sewage system now, which they didn't have before. That's at record 48. He also went on to say that we all know that the town of Cortland did need it, because they got a notice from the Cal Sanitary District saying that they were not going to service them anymore. That's at record 48. So the town benefits. With the trial court's decision, the town benefits, and the town doesn't have to pay reimbursement for the tax purchasers who partially paid for the sewage system. So the person and the folks who lose here are the tax purchasers. They're the only ones that lose. Well, how about the taxpayers that would be stuck with the National Oreum tax that is not going to benefit them? The special service area tax. Well, no, they don't lose. They have a sewage system that's been implemented in the town. And I also want to note, Your Honor, is that if, in fact, the town of Cortland reimburses us tomorrow, the taxes, the lien for taxes will reattach to all those properties. It reattaches to the property. Once it reattaches, the town of Cortland or the county itself has the right to go in and purchase those taxes and take title of the property, too, which could bring the property back into title with the town of Cortland. So it would be a wash, basically, is what you're saying. Well, I mean, I don't know if it would be a wash. It would protect the tax purchaser. It would keep the purpose fulfilled, and the town would have to pay a portion of the sewage system because they received taxes from an erroneous sale. So the taxes from the erroneous sale should be refunded and must be refunded to protect the ultimate purpose, which is incurring for the payment of delinquent taxes and protect these tax purchasers. So the only person harmed here are the tax purchasers. The collector does not have to seek the money or follow up or enact reasonable rules to try to come up with the money or deal with the town of Cortland if the decision is upheld. If the decision remains in effect, it's our contention that a chilling effect could come into play here with tax purchasers wanting to participate less in DeKalb County because they're not getting monies or refunds they're entitled to under the code. That's why the code was set up, and the tax purchasers also need protected. Property owners have numerous protections in this property tax code, and so do tax purchasers, and the court must recognize that. Any policy which is adopted by the collector, or the treasurer in this case, in paying these refunds and seeking reimbursement from the next property taxes collective, for instance, by Cortland, would be consistent with the purpose of the tax code. Again, the ultimate liability for any refunds here rests with the taxing body. The taxing body in this case is the town of Cortland. They receive monies from erroneous tax sales. Therefore, they must repay it, and we pray that the court would reverse the trial court's decision. Thank you so much. Thank you. Mr. Blumenthal. Thank you, Your Honors. Sure. And you're here on behalf of Janssen Investments, and we have five minutes. I am. I'm Jeffrey Blumenthal on behalf of Janssen Investment. Counsel for all parties, may it please the court. My father is 95 years old. Sort of to keep his mind active, I said, Dad, I've been working on this really complicated case. Here's all the briefs. Why don't you read them? I wanted to see if he could grasp everything that was going on. And sure enough, he read everything, and I said, So, Dad, what do you think? He's certainly not going to tell us your dad's legal opinion. Well, he thought, Jeff, I don't see how you're going to lose this. I said, Dad, I hope the justices agree with you. Now you're going to make us feel guilty for a rule against a 95-year-old. He's only my father. Is he a lawyer? He's not a lawyer. We'll give it less. I'm still lucky to have him. You are. You are. Why are we here, Your Honors? Give him our regards. You will. Thank you. We're here because Cortland levied a tax. Cortland created SSAs, as it has the right to do. No one questions its right to create these SSAs. But let's keep in mind that it's Cortland who caused this problem. Cortland not only caused the problem, but Cortland received the benefit of this money. There's no question about that. We know, and let's not, Cortland is going to get up here and say, Oh, we're constitutional and we followed Section 27 of the property tax code, the Special Service Act. Yes, they did. We're not here to complain about the constitutionality or the legality of the creation of the tax. That's not what this is about. What this is about is what the sale and error proceeding is. It's a simple proceeding. It involves two parties, the tax purchaser and the collector. Why Cortland got involved in this is beyond us. Mr. Carter mentioned this. The statute provides, upon demand of the tax purchaser, the collector shall refund the money. Who's the collector in this case? Pardon? Who's the collector in this case? The collector is the treasurer. The treasurer shall refund the money. Not Cortland. The treasurer of DeKalb County. That's what the statute provides. It's unquivocal. This is the plain language. And why does the statute provide that? It provides that because there's only two parties to the proceeding. The two parties are the tax purchaser who bought the taxes and the collector who sold the taxes. Once, and we've maintained this from the very beginning, once the collector, once a sale and error is declared, and the tax purchaser makes the demand, the collector shall refund the money. There's no one else before the court. The court has no authority to order anybody else to pay that money. Only the collector, because there are only two parties. Now, somehow the collector gave notice to Cortland and said, hey, come on in this to protect yourselves. I don't know why that happened. In the record, you have 54, I believe, other sale and error orders, all these sale and error orders entered into DeKalb County in 2013. It's busy for those. Pardon? DeKalb County is very busy. Well, but the point is that every one of those sale and error orders, no one else appeared in that case. No taxing district intervened. It was not a big deal. The sale and error order was entered. Many of them said the treasurer shall refund the money. Some of them said the collector. The state's attorney on behalf of the collector or treasurer agreed to all of them. They didn't make this involve all the taxing districts. And why, Cortland, why aren't every taxing district involved? And then I think we need to look at what both the treasurer and Cortland are banking on is this second section of section 21-310, which says, after making the payment, the treasurer shall deduct pro rata from the taxing body. Now. Who's the taxing body? Well, it's clear who attacks it. The property tax code defines a taxing district as a government unit that can levy a tax. And the definition is clear. Now, it doesn't define taxing body, but as Your Honor pointed out, those two terms are interchangeable. And in fact, we cite in our reply brief, the Illinois Administrative Code, which specifically states, taxing district is a taxing body, any unit of local government, school district, or community college district with the power to levy taxes. Taxing district and taxing body shall be construed to be interchangeable terms. So in 21-310, when it says, shall deduct pro rata from the taxing body, it means taxing district. And the property tax code throughout uses them interchangeably. There's never any instance, there's never doubt that a taxing district or a taxing body are one and the same thing. And the prime characteristic is it has the authority to levy a tax. An SSA does not have the authority to levy a tax. Does Cortland have authority to levy a tax? Absolutely. Cortland is a taxing body. Cortland is a taxing body. It levies taxes all the time. It levies taxes on its citizens. That's how it operates as government. Cortland levies a tax. Cortland levied the tax here. It said to the treasurer, okay, collect this tax and pay it for the account to the SSA. Much like in that case, the Arlington Heights case that we cited, there was a TIF and Village of Arlington Heights says, okay, we designate these funds for the TIF. But when the TIF ran out and there were no funds there, it was Arlington Heights who had to repay it. Now, that brings me to something when we talk about fairness and why Bidorf and my client, Chanson, are slightly different. Is this, we're entitled to interest. Statute is unequivocal. And even the court order got that right. The trial court got that right. It said, yes, Chanson is entitled to interest at the statutory rate, which is 1% per month. And that interest is payable from the time Chanson paid the taxes until the time the refund is paid. That interest continues to run. And it comes from a specific fund set up to pay that interest called the Sale and Error Fund. It comes from the Sale and Error Fund. Now, what happens, we're entitled to that interest. And I'm going to point out to the court that Courtland, that Chanson submitted its certificate to the treasurer demanding that it be paid as required by the statute. We haven't seen it die. Because of the court's order, we haven't seen it die. We're suffering even though we were encouraged. But the point of the interest is this. If we're not, if the fund, we're not paid, then what's going to happen here is this. That fund is going to be broke. And if that fund is broke, then what happens for every sale and error in DeKalb County from now until the end of time, what has to happen is every taxing district that receives and had received the taxes is going to have to pony up the money to pay this interest. So who is being penalized here? Sure, the taxing, tax purchasers being penalized. But Courtland is putting this on every other taxing district in DeKalb County. That's not fair. And Courtland got the services. Sure, it didn't work out the way it wanted it to. No question about it. But is it fair that they collect the money, that they have their hand out for the money, encourage the tax purchaser to purchase, knowing that if a sale and error is granted, they're entitled to a refund, and then say, sorry, you're not getting a refund. We legally passed this ordinance. No, you legally passed it, but it didn't work out. Now, unfortunately, levy a tax and pay up. You shouldn't shift this to the other taxing districts. That is inherently unfair. Thank you, Mr. Blumenthal. I'll reserve the rest of my time for the book. You do have 10 minutes on the book. Thank you. Uh-huh. Mr. Steiner. Ms. Strauss, ma'am. Oh, you're going to go first? Okay. I find it fitting that today is tax day. Property tax day. Would you take your time? Thank you. Good morning, Justices. I'm Abby Skrull on behalf of the DuPont County Collector. May it please the Court? Yes, ma'am. Let's distinguish the duties of the Collector. The Collector collects money from taxpayers and distributes that money to taxing bodies. Money received by the Collector goes to the different taxing bodies' accounts rather than sitting in one account held by the Collector. They're much like the bank. The Collector does not know where to get the money that the appellants are requesting. In the appellants' own briefs, they state that statutes must be read together with other statutes to regulate the same subject and harmonize whenever possible. Hence why it's necessary to read Section 21.335 of the Property Tax Code when reading Section 21.310. Section 21.335 provides that refunds of interest or costs upon the petition for sale and heir shall be paid by the County Treasurer as trustee of the fund created by this section. The statute specifically refers to payment from the fund, not payment from the Collector or Treasurer. The statute is directly in line with the Collector's argument and the trial court's conclusion that payment shall be made from a specified fund or account. The Collector doesn't just go out and start pulling this money from somewhere, and especially not an account that the Collector doesn't have. Further, the fund shall be the sole source of payment and satisfaction for interest or costs. Once again, the statute keeps referring to the word fund and then goes on to state that the fund shall be the sole source for payment, which also mirrors the Collector's argument and ultimately the trial court's conclusion that the appellants can only get refunded by the special service area accounts. They cannot be refunded... So as in this case, there's no money in the SSA 7. So doesn't that frustrate the intent of this particular statute in discouraging individuals from tax purchases? I would argue no, that's not the case because we're still getting these tax purchasers. Likely as we're in here today, someone's out there purchasing taxes. They follow the statute. They're able... These are intelligent people. You know, these aren't just your tax... You're your owners of a property objecting to a tax assessment. You're dealing with someone that has to know the strict procedures that are in place to buy the taxes and to send out the required notice. So they're taking that risk that they may not get the money. Correct. It's just like any investment. You take a risk and you might not get a return on that investment. But they're also able to figure out, you know, if they purchase within special service area 7, they can determine that their taxes would come from special service area 7 if they're going to get refunded. So those are things they can look into in advance before making that investment. I'm sorry. Go ahead. I threw you off. The trial court has already accurately interpreted the plain language of Section 21.310 as well as the plain language of Section 21.335 when read together. The clear intent of Section 21.310 subsection D is that the taxing body for whom the tax is collected shall be the entity to refund the money in the case of a sale on air. The tax was not collected for the county collector in this case. It is also clear that the statute's intent is that the collector shall make refunds from the accounts of the appropriate taxing bodies at such time as payment is made to the taxpayer. So if the appropriate taxing body does not have the sufficient funds at this time, the collector doesn't just front that money, go into the negative, we really don't have money to just front, and then wait to get paid back, going to a point that Justice Spence even asked, when is the payment supposed to be made back? If you read the statute, it's clear to me that the payment's immediately. They don't. The collector doesn't issue the funds, wait until the taxing body has the money. They pull the money right from the taxing body to pay it immediately. The clear goal of the property tax code is to refund tax revenue from the taxing body, not the collector who has no money of her own. So it would come from Portland then, right? I'm going to let Mr. Simon speak to where those funds would come from, since I'm not sure the logistics within the town of Portland, but it would still be our argument that it would have to come from the special service area that the tax is paid for. So you're initially saying, until we hear from Mr. Simon, that the way you're reading the statute is it has to come from special funds. Correct. In this case, the SSA 7. Correct. Even if there's no money in that account. Correct. Because if there's no money in that account, what these tax— There were taxes. Well, what these tax purchasers aren't mentioning is that they can go after the property owner. So they have relief under Section 21-340 to go after the property owner, and then they would get 10 percent interest. They'd actually get a greater return on their money by going after the property owner, because the property owner got to use the property during that time that they were paying this money for the taxes. So they're not just out their investment money because there's no money within the Special Service Area 7 fund. But as was mentioned earlier, with the special service areas, you're paying for that area. So when those people were paying the tax, the people in Special Service Area 7 and all the areas that were connected to that sewer district are getting the benefit of the sewer district. The town of Portland wasn't connecting to that sewer treatment facility, so it would be paid within that area, just as I wouldn't pay taxes for a school district that I don't live within that district. Do you agree? Is your interpretation of taxing district and taxing body that they're synonymous? Yes, I think that they can be used interchangeably. But at the same time, when we talk about Portland, I would almost see Portland as potentially the taxing body. And then if you look at the district, the district would be the actual district that it's paid to. So Special Service Area 7 is this district. I'm paying my taxes within that district. So someone from another district shouldn't have to be burdened by paying those taxes back when I'm the one getting the benefit for it. So appellants are asking the collector to produce money at this time, which it does not have. And they're asking for relief that the statute clearly does not provide them to get. The property in question was within the Special Service Area. The taxes were paid to that Special Service Area. Therefore, any refund should come from the specific Special Service Area. Appellants have cited to the Village of Arlington Heights case. There are several clear distinctions between that case and our case. First, that case deals with TIFs rather than Special Service Areas. Well, I mean, isn't it kind of the same thing when you're looking, when you're interpreting the statute? It's a special fund, isn't it? Correct. It is a special fund. We're still dealing with the TIF. It's my understanding that TIFs do have some of their own regulations as well. Second, the collector in the Arlington Heights case chose to pay the refund immediately to stop the interest and then chose to seek reimbursement from the Village. The court stated that those actions were permitted. If the statute was clear that that was what was supposed to happen, I don't think the court would have stated in their conclusion that the collector's actions were permitted. However, the court then even further stated that such actions were not required. Further, the plaintiffs in that case were tax objectors contesting an assessment of their own property. The plaintiffs were not sale and error petitioners. As I mentioned, the sale and error petitioners have alternative relief to get their money back. What the appellants engaged in here was ultimately an investment. There was never a guarantee of return, just as there is no guarantee of a return on any investment. The appellants assert that getting all their money back was always a guarantee, but that assertion is wholly inaccurate. The appellants also assert that by not ordering the collector to issue the tax refund immediately, that the entire notion of purchasing taxes stands to be eliminated. However, this assertion, too, is wholly inaccurate. The purchase of taxes is happening on a regular basis. It's likely happening right now. There are strict procedures in place for these purchases, and those who engage in that practice do so knowing the strict procedures that must be followed, knowing where a refund would likely come from, or at the very least, knowing how to find out where a refund would likely come from, and knowing the risks involved. I agree with what the appellant said, that this is a simple process. This process is routine, and the routine includes following the statute, which is exactly what the trial court has done here. Thank you. Thank you. Good morning, Your Honors. Good morning, Counsel. My name is Adam Sinai. I'm here on behalf of the town of Cortland, and certainly I'm going to address why it should come from the SSAs as opposed to the town itself. Why the refund should come, should be limited to SSA 7 or SSA 8, respectively, depending on which petitioner is involved, because they are located in different special service areas. They are not taxing bodies, correct? Let me address whether or not taxing bodies or taxing districts are synonymous or can be used interchangeably. Counsel has presented examples of cases where courts have written opinions where they use the terms interchangeably. There is no case law which has specifically held that taxing bodies and taxing districts are synonymous. They've cited a provision of the Omaha Administrative Code that is a procedural rule before the Property Tax Appeal Board and is not a generally applicable definition for the entire property tax code. So I don't find any of the citations that they've presented to be definitive. Even if the court were to find that taxing district and taxing body are synonymous and can be used interchangeably, the statutes, nonetheless, speak as follows. Section 21-310D, the statute that governs this case, says the county collector shall deduct from the accounts of the appropriate taxing bodies their pro rata amounts paid. The related section that deals with the refund of the interest, Section 21-335, says that if the sale and error fund runs out of money, then the court may authorize the collector to pay the interest portion of the award pro rata from those accounts where the principal refund of the tax and purchase price under 21-310 is taken. Both of those sections refer to the accounts that received the money. And which accounts would those be? Well, for the Jansen petitioner, that would be SSA-8 account, and for the Bidtorf petitioner, it's the SSA-7 account. Those accounts have separate accounting. The collector separately reports on them. They're described on separate line items on the tax bill. Everything about the property tax collection process separately itemizes and accounts for the special service areas. They are a separate and distinguished account. And the reason for that is because the Constitution requires there to be a rational basis connecting the burden of the taxes to the benefit received by those taxpayers. For the town of Cartland, who receives the money? What office? Do they have a treasurer? Which money? I'm sorry. Tax revenue. Do they have a treasurer for the town of Cartland? General and belonging taxes, once they're collected by the collector, are remitted to the town treasurer. Now, does the SSA have a treasurer? The SSA does not have a treasurer. Does it still go through the town of Cartland treasurer? No. Where does it go? All the money collected for the SSAs was remitted directly to the bond trustee who paid the bondholders, who paid for the bonds, that ultimately constructed the sanitary services. The town of Cartland... So that's why the money's gone. The money's gone. The town had no discretion on what to do with the money, as distinguished from the TIF in Arlington Heights. So then in most cases, in all cases, if you have an SSA, so it's a special account, that is 99.9% of the time going to go to whomever it is that is developing whatever the special assessment is for, correct? Whether it be sewage or roads or whatever. Isn't that right? I mean, they're not going to hold that money. It's not going to sit there. It's going to kind of repay them for what they've done. Right. So then how is it that a tax, somebody who buys a piece of property and it's a tax in error, how is it that we're going to expect them to go to somebody who there's never going to be any money in those special accounts? They don't have to rely on the special accounts. They can go to the property owner under Section 21-340 and get a deficiency judgment. They can either go directly to them in the first instance, instead of asking the collector for the money, or if the collector can't refund all the money, they can go and get a deficiency judgment against the owner. These properties that are relevant to this case are both currently owned by commercial property owners, and they can sue them for deficiency judgment and get a 10% interest under the statute. They have relief. This is not an all-or-none proposition before the court. I'm sorry. Go ahead. So this is not the first time the party has challenged the SSA, these SSAs, the Town of Cortland Enacted. This court has, in the past, expressly upheld the constitutionality of these special service areas. The Town of Cortland has, in fact, started using the sanitary sewer system, but this sewer system was built specifically for the purpose of allowing new development to occur. It was built for the new development and paid for by the new development, and that's how the rational basis works. The fact that the Town now uses the sanitary sewer system now doesn't change that, and we speak in our briefs to the appellate decisions of Grace and Corrin that explain why the rational basis that the Town relied upon to set up the special service areas was constitutional and needs to be upheld and why the Town of Cortland's citizens who are not located within the special service areas shouldn't have to pay this refund because it would result in them breaking the rational basis established in the special service area and end up with an unconstitutional result. And we know that where a statute is capable of two constructions and one results in a constitutional result and one is not, the court shouldn't favor interpreting the statute in a way that ends with the constitutional result. And the trial court's decision was proper and interpreted the statute in a way that preserved the constitutionality of the special service area. I want to also emphasize that all of the benefits bestowed by the special service area are still present and still available to the property owners. They are still entitled to all the density of development that they were entitled to. They're still entitled to connect to the sanitary sewer system. None of the benefits granted to the property owners have been taken away. They're all still there. So the balance of burdens and benefits has not been broken by the Town. Everything the Town has promised the property owners is still available. Are you saying that 21-310 doesn't have any safeguards in there for the tax buyer? It's just like caveat emptor, you know, you come in and what happens, happens? So let me clarify our argument about caveat emptor. We don't argue at all that they aren't entitled to a sale and enter. The court awarded the sales and enter. We did not argue that. We haven't contested that the declaration of sale and enter is correct. What we're arguing is that when you are a tax purchaser, you must take the taxes you're purchasing on their face the way they are. You don't have the right to look beyond the tax bill and say, well, if we get a refund, we should get it from the Town of Portland instead of from the special service area because the Town really got all the benefit. They aren't allowed to look behind the property tax bill. There's nothing in the sale and enter statute which grants the tax purchaser the right to stand in the shoes of the property owner, for example, and to file a tax objection to challenge the underlying taxes. They have to take the taxes as they are. And frankly, when they buy the taxes, they know that the money is going to the special service area. Now, any tax purchaser certainly has to look at the tax bill for the property that they're buying the taxes on and they can very clearly see where all the money is earmarked for. It's not a surprise. So that is the degree to which we say that they are subject to caveat emptor. They know where the money is going to. They know where the money must come from. We are not arguing that caveat emptor would prevent them from getting a declaration of sale and error. In terms of the Arlington Heights case, all the parties cited to it, petitioners cited it favorably. We have cited it to distinguish it from this case. Justice asked whether or not a TIF is a special taxing district account, just like a special service area. I would proffer that they are distinguishable. A tax increment financing district doesn't have the constitutional underpinnings and the rational basis requirement that a special service area does. In a tax increment financing district, the source of the money comes from within the district and there are limited types of improvements that are allowed to be paid, but there's no rational connection. There's no proportionality requirement in a tax increment financing district. So that's one way to distinguish between the TIF in the Arlington Heights case and the special service area in this case. As we discussed also, the plaintiffs in the Arlington Heights case were tax objectors challenging the assessment on their property. They have no supplemental remedy. The only source of refund they have is from the collector. They can't go after subsequent property owners. They are the property owner. In this case, the sale and error petitioners do have supplemental relief available under 21-340. I'm still a little confused because I'm looking at the statute and I'm looking at the SSA and I can't help but distinguish that the SSA is not a taxing body or a taxing district. So help me reconcile how you could say, you know, he had to go after the SSA, which has money in it when the statute says a taxing body or a taxing fund. Sure. Our principle argument is that taxing district and taxing body are not the synonyms. They're different terms. They should be used differently. Section 18-45 of the property tax code refers to taxing districts separately from special service areas. We rely upon that to argue that they are, that taxing bodies is an umbrella term that covers both taxing districts and special service areas. Even if the court's not persuaded by that, even if you find that taxing body and taxing district are synonymous, the statutes nonetheless refer to the accounts to which the taxes were paid and from which the refund should be paid. So even if the town of Portland is a taxing body instead of the SSA, the SSA, the SSAs are the accounts from which the money should be paid because they're the accounts to which the money was paid to. I see what you're saying. Yeah, sorry, just one quick question. If we were sitting here five years ago when there's money in SSA 7's account, we wouldn't even be having this argument, right? That's correct. The refund would be made, we're done, everybody goes home. And that's happened. In fact, Mr. Blumenthal posits in his brief that the money his client paid to purchase the taxes was used to pay a prior tax purchaser who was entitled to a refund. Out of the SSA 7. Out of SSA 8 in his case, yes. So yeah, that's how it works. That's how it has worked. Sounds like it's kind of like the way the state of Illinois pays its bills. Pays our pensions. Or our pensions or whatever. It's a big pyramid scheme. That's right. Okay, thank you though. Thank you very much. Mr. Blumenthal, would your dad say that you should stay on the bottom? He would say this. I'm going to start with this. First of all, let's dispel one rumor. It's not on the record, but the owner of this property, there was a foreclosure, it was a bank foreclosed, it put the property in a separate land trust. The owner of this property doesn't have any money either. There's no owner to go after. Let's get that straight. So when they say we have the option to go after an owner, that's an option. That doesn't mean we give up our right. Well, putting aside the special circumstances of your particular client, we're going to make a decision here which is going to affect everyone. So whether or not somebody has money or not is not the issue. The issue is where does the money, who does he turn to, regardless of whether or not the owner. We all know in the end that you can go to the homeowner. We all know that. But in your particular case, you're saying we'd be hampered because the homeowner has no money. But is it Cortland? Is it the collector for the county? Or is it the SSA? All right. Putting aside the fact that there's one other step we can go to. We're going to go back to where I started this argument originally. An SSA is a nothing. It's an area. Let's say this court. But how about his argument about, okay, the money goes to Cortland, and then they give it out. That's right. They give it to certain places. That's exactly the point. Cortland is the people at Cortland. That's where I started. We're here because of Cortland. Cortland set up this whole system. Cortland levied the tax because, of course, it's a taxing district. It's a taxing body. What does that mean? It has the ability to levy a tax. Cortland levied the tax. And it levied the tax, and then it directed the treasurer, set up an account, and when you collect the tax that Cortland levied, pay it here. It's an accounting measure. That is not a levy of a tax. Cortland caused this problem. Cortland levied the tax. Cortland did it to provide a service to its citizens, theoretically to its future citizens who never came into existence. That's the whole problem. The tax purchaser is not the taxpayer. They didn't levy the tax to be paid by the tax purchaser. They levied the tax to be paid by someone who didn't even exist yet. And now, when it comes time to pay the bill, Cortland said, uh-huh, go to the SSA. If this court wanted to and said, okay, we ordered the SSA to pay this tax, you can't do that. There's no one to order. The SSA isn't a body. The SSA can't be sued. We don't get any relief. I get what you're saying. But how about what Mr. Simon says and Ms. Segrus also say, is these tax purchasers aren't ignorant to the fact that they can search and figure out where the tax money has gone. So when they purchase these tax properties, they should come in with their eyes wide open as to knowing what tax, where the taxing body is or what the taxing body is. Two things. When a tax purchaser buys a tax at a tax sale, the tax purchaser does so because the government, in this case, Cortland and the collector, set up rules. And what are those rules? Those rules are, we're going to collect your money. You're going to pay this tax money. An investment. Maybe you're going to get redemption. Maybe you're going to get a tax deed. But we assure you that if grounds for sale and error exist, you're going to get a refund. You're going to get paid back every dime you put in. Sure, it's a risky investment. But there's a rule, and the rule is, if sale and error grounds exist, you get a refund. It's almost laughable what Mr. Simon just said, what Cortland argues to this court. He says, well, we don't begrudge them getting a sale and error. But so what? They're not going to get their money back. That's not what the statute says. The tax purchaser is entitled to a refund. And if you stop giving tax purchasers a refund, the whole purpose of this statute, the whole purpose, and we emphasize this, is to encourage a tax purchaser to purchase the taxes to pay the money, knowing that if the grounds exist, it gets a refund. It doesn't care that it's called a sale and error if it doesn't get a refund. It's entitled to the refund to get its money back. Imagine you said, Your Honor, oh, that's how the state of Illinois pays its bills. It doesn't feel so good if you're the one who doesn't get paid. But in this case, you promised, the government promised, if you buy these taxes and agree to buy them, we promise you that if the grounds exist, you're going to get your money back. And now the court is saying, oh, sorry, you should look behind the statute to see where this money is going. Where's the duty to do that? There's nowhere anywhere in the property tax code that suggests that before a tax purchaser pays taxes, it needs to investigate who's going to pay a refund in the event it's due. And if it did look at that, who does the statute says pays the refund? The collector. And the collector says, well, where are we going to get the money from? That's right. The collector says, where are we going to get the money? We put all the money in these assets. So what the collector does is, it decides where to get the money from. I say what the collector should have done at the beginning is sale and error. Collector pays the refund. It goes to the county board, gets the money, and then it debuts it from Cortland's accounts. That's the taxing body. Say that again. The Cortland should have done what the treasurer should have done is this. Treasurer of Cortland. No, the treasurer of DeKalb County. Okay. The DeKalb County collector who collected the taxes when we paid them. I get it. And the collector collected them. That's why we have this contract with the collector. Okay, so DeKalb County should have collected. Collected. Then, when the sale and error is granted, the DeKalb County, either the county treasury or the county at large, pays the refund as it's required to do, and then the collector, in his own discretion, deducts it from the account of the taxing body. Who is the taxing body? Cortland. It shouldn't have even brought Cortland into this. It should have just done it because that's the treasurer's job, just like she did it in every other sale and error case that went before, that we showed in 2013. That's what she should have done. It's funny that Cortland got up here and argued, oh, we don't have the right to look behind the statue. We're not the ones who are looking behind the statue. We're looking at the plain language of the statute, which says collector pay the refund. That way we, the tax purchaser, get the money. What's fair here? Is it fair for the government to say to a tax purchaser, who has no obligation to pay the taxes, to say to them, we want you to pay these taxes, we want you to purchase these taxes, and we guarantee you if you purchase these taxes and the sale and error grounds exist, we're going to give you a refund. And you do so based on that promise. And now when it comes time to pay the refund, you say, ha, we're going to allow you to get the refund. But all the equipment and everything that doesn't have the money, that's never going to have the money, the way we set it up. So then what is your suggestion for us in ruling? Are you ruling that we should order DeKalb County to pay? Well, you should order the DeKalb County collector to pay the money and deduct the money from the accounts of the taxing body. And as long as Cortland is before the court, in Arlington Heights, what happened there, that's what happened. The collector paid the money and then sued Arlington Heights. Cortland has sort of done a favor by appearing at this stage of the proceeding because this court can say, yeah, the collector, collect the money from Cortland. They're the ones who set this scheme up. They're the ones who levy the tax, the only ones who can levy a tax. And let's not be misled here. There's nothing unconstitutional, nothing illegal, about Cortland levying a tax on its citizens to repay its debts. And if one of its debts is a debt to the DeKalb County collector, so be it. But to say, oh, go to an SSA who is uncollectible because it can't be sued, it has no money, and to say stick it to a tax purchaser who we promised would get the refund, we had no duty to look behind where we were purchasing who got those taxes. And that brings me back to what Mr. Carter said almost at the beginning. If once this refund is paid, what the court has to realize is the parties are in the same exact position they were in as if no tax sale had taken place. What position is that? The taxes are owed, the taxes are alleged on the property, the property can be resold, they're getting their late payment interest, they can pursue the owner, this property tax bill gives the treasurer... Isn't that what they tried to do before? Pardon? Isn't that what they tried to do before? No, no, they never tried to do that before. They sold it once, they could try selling it again. And mind you, what's happened here, what's happened here is when properties aren't sold at a tax sale, they go to the county trustee, the county trustee goes through the tax deed procedure, the tax deed issues, and then they've got this tax deed, which is merchantable title, they can sell the property. It's my understanding, again, it's not in the record, I'm not suggesting it is, but Cortland is now getting some of these properties from the trustee who got a tax deed. Now, that didn't pay them. And tax purchasers aren't getting the money. But let's keep in mind here... Let's keep in mind, you're trying something. I appreciate that, Your Honor. Keep in mind here, the tax purchaser here is the innocent party. We purchased this, we deserve the refund, and we followed the statute. You promised us the refund. This isn't a bank switch, this is the government. And if we don't get our refund, this really does have the possible potential of impacting every tax purchaser and every tax sale ever, because they're not going to be guaranteed the protection that the statute was designed to provide. That's just not fair, especially under the circumstances of this case. Thank you very much. Thank you, Your Honor. All the parties, thank you so much for your arguments today. We appreciate the time that you have given us, and we will take this case under consideration. A decision will be rendered in due course after Justice Jorgenson listens to it. The court is in. We're adjourned for the day. Thank you. Thank you very much.